First Division
March 19, 2007

No. 1-05-0822

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 04 CR 6540 |
| | ) | |
| ROMEO CASTILLO, | ) | Honorable |
| | ) | Thomas Davy, |
| Defendant-Appellant. | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

On February 14, 2004, defendant, Romeo Castillo, was charged with domestic battery and aggravated battery of a police officer. The State nol-prossed the charged on March 9, 2004. Defendant was transferred to the Illinois Department of Corrections (IDOC) for a parole violation. On March 31, 2004, the State refiled the aggravated battery charge against defendant. On August 11, 2004, the date defendant was released from the IDOC, defendant was served with an arrest warrant for the aggravated battery charge and taken into custody. A bench trial was held on December 1, 2004, and following the trial, defendant was found guilty of the aggravated battery. At sentencing, the trial court initially sentenced defendant as a Class X offender to a term of 10 years' imprisonment. However, the trial court later vacated defendant's sentence of 10 years and imposed a sentence of 8 years in the IDOC.

Defendant appeals, arguing that: (1) defendant's right to a speedy trial was violated; (2) the State failed to prove defendant guilty beyond a reasonable doubt; (3) the trial court abused its discretion in sentencing defendant to eight years' imprisonment; and (4) defendant is entitled to

an additional 151 days of credit for time spent in custody.

On February 13, 2004, defendant was arrested for domestic battery against Dolores Almanza and aggravated battery against Officer Gregory Garibay. Defendant was charged with these offenses on February 14, 2004. The trial court noted defendant's demand for trial. At his next trial date, the trial court noted "defendant's continuing demand for trial." On March 9, 2004, defendant made a demand trial and the State nol-prossed the charges. Defendant was not released from custody due to a parole violation. He was transferred to the IDOC on March 12, 2004.

On March 31, 2004, the State indicted defendant for the aggravated battery of Officer Garibay. An arrest warrant was issued for defendant on April 23, 2004. On August 11, 2004, defendant was released from the IDOC and taken into custody on the arrest warrant. Defendant was arraigned on the aggravated battery charge the next day. All continuances following the arraignment were by agreement.

A bench trial was conducted on December 1, 2004. Prior to the start of trial, defendant's attorney orally moved to dismiss the charge based upon a violation of defendant's speedy trial rights. The trial court denied the motion and found there was no showing that the State's *nolle prosequi* of the original charges was an attempt to toll the running of the speedy trial term and defendant made no demand for trial while in the IDOC pursuant to the Interstate Detainers Act.

The following evidence was presented at the trial.

Officer Gregory Garibay testified that he is a Chicago police officer. On February 11, 2004, Officer Garibay received a complaint of a domestic battery alleged against defendant. The

alleged victim was Dolores Almanza. Defendant was not arrested on that date.

On February 13, 2004, Officer Garibay was contacted by Almanza's daughter. Based on what Almanza's daughter told Officer Garibay, he went to the Stony Island Motel, located on Stony Island, near 92nd Street in Chicago. About five squad cars and a sergeant responded to that location. Officer Garibay stated that he was in uniform and driving a marked squad car.

Officer Garibay spoke with the motel clerk and found out that defendant was staying in room 53. He proceeded to room 53. The motel room doors are on the outside of the building. As he was walking toward that room, Officer Garibay saw a man walking away from room 53. Officer Garibay testified that he yelled, "Hey, stop," to that person. Officer Garibay said that he yelled at the man in order to determine whether the man he saw walking away was defendant. Officer Garibay had retrieved a photograph of defendant prior to his arrival at the motel. Officer Garibay stated that the man turned, looked, and began to run. Officer Garibay recognized the man as defendant.

Officer Garibay began to chase defendant and continued to yell at defendant, "police, stop, police, stop." Defendant continued to run. Officer Garibay ran after defendant for about three-quarters of a block before he caught up with defendant. Officer Garibay stated that he placed his hands on defendant's shoulders, and then defendant turned and struck him in his left eye with a closed fist. Officer Garibay testified that he was still able to hold onto defendant, but his arms were sliding down defendant's body. Eventually, Officer Garibay was holding onto defendant's legs. While he was sliding down, Officer Garibay felt pain in his right shoulder and heard "a popping noise." He could not move his right arm, but was still able to hold onto

defendant's legs.

Officer Garibay said that another officer, Officer Espanoza, arrived and tackled defendant. Defendant was arrested and placed into custody.

Officer Garibay testified that he sought treatment at the hospital. After an examination, Officer Garibay was informed that he had a torn rotator cuff and bruising and swelling to his left eye. Officer Garibay was out of work for two months as a result of his injuries.

Officer Garibay testified that he did not make a report in this case; his partner, Officer Espanoza, did. When defense counsel presented a tactical response report for this case, Officer Garibay stated that he did not prepare it. It was prepared by his sergeant, Anita Madena. He read the report and signed it. Defendant's attorney pointed out that on the report, the box for assailant battery was not marked, but the one for assailant assault, imminent threat of battery was marked.

The State rested following Officer Garibay's testimony. Defendant moved for a directed finding, which the trial court denied.

Defendant testified on his own behalf. Defendant stated that he was 41 years old. He said that he has a prosthesis in his left eye and is blind in that eye.

Defendant testified that on February 13, 2004, he was at the Stony Island Motel with Dolores Almanza. They were "planning something." At one point when defendant left the room, he saw police officers. He said he realized something was "going wrong." He stated that they called to him and he put his hands in the air. Then, all of sudden he felt someone hit him on his blind side. He fell and broke his glasses. Defendant stated that he cannot run because he cannot see on his left side. He will fall or trip. Defendant denied striking any police officers.

4

Defendant said that Officer Espanoza tackled him.

On cross-examination, defendant said that Officer Garibay was not involved. Defendant denied seeing Officer Garibay. Defendant denied Officer Garibay trying to grab him. Defendant stated that he did not know he was wanted for domestic battery. Defendant said that Almanza's daughter was upset because of a dispute with defendant's ex-girlfriend. Defendant testified that he and Almanza were planning to leave town because Almanza was tired of her daughter getting involved in their business. Defendant testified that he cannot run because his knee is "kind of split in three or four spots."

On redirect examination, defendant stated that because he is blind in one eye, he has trouble with distance and perception. He sometimes is unable to grab things when offered to him.

The defense rested after defendant's testimony.

Following arguments, the trial court found defendant guilty of aggravated battery. The trial court specifically found Officer Garibay to be more credible than defendant.

At the January 2005 sentencing hearing, the trial court denied defendant's motion for a new trial. Defendant's attorney did not raise the speedy trial issue in the written posttrial motion, but defendant wanted him to raise the issue again. So the attorney made an oral motion, which was denied. The trial court sentenced defendant to a term of 10 years under the belief that defendant was to be sentenced as a Class X offender due to his prior convictions. In February 2005, the trial court considered defendant's motion to reconsider his sentence. At that time, the trial court vacated its prior sentence because defendant was not Class X eligible and was instead

only eligible to be sentenced for a Class 3 offense. However, because of his prior convictions, defendant was eligible for an extended-term sentence. The trial court sentenced defendant to an extended-term of eight years.

This appeal followed.

First, defendant asserts that his conviction must be reversed because the State violated his speedy trial rights. Defendant contends that the State's decision to nol-pros the charges on March 9, 2004, and to refile charges less than a month later was used to evade defendant's speedy trial rights. The State responds that its act of nol-prossing the charges was not a tactical maneuver used to violate his speedy trial rights, and that defendant was tried within his speedy trial term.

Initially, the State contends that defendant's speedy trial claim is waived because it was not presented in his written motion for a new trial. To preserve an issue for review, defendant must object both at trial and in a written posttrial motion. People v. Enoch, 122 Ill. 2d 176, 186 (1988). Failure to do so operates as a waiver as to that issue on appeal. People v. Ward, 154 Ill. 2d 272, 293 (1992). Here, defendant's trial counsel did not include a speedy trial claim in the written posttrial motion, but at the hearing, defense counsel informed the trial court that defendant wanted to orally raise the issue. The trial court considered the issue and ruled that the motion for a new trial on that ground, as well as the written motion, was denied. The purpose of the waiver rule is to ensure that the trial court was given the opportunity to correct any errors before they are raised on appeal. People v. Willis, 349 Ill. App. 3d 1, 16 (2004). Because the trial court considered the issue when defense counsel raised an objection at the start of trial and

again when defendant orally raised the issue at the hearing on his motion for a new trial, we find the issue has not been waived.

In Illinois, a defendant possesses both constitutional and statutory rights to a speedy trial U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; 725 ILCS 5/103-5 (West 2004). The constitutional and statutory provisions address similar concerns; however, the rights established by each of them are not necessarily coextensive. People v. Kliner, 185 Ill. 2d 81, 114 (1998). In the present case, defendant asserts only a violation of his statutory right to a speedy trial and does not raise a constitutional issue.

Under the statutory provision, proof of a violation requires only that the defendant has not been tried within the period set by statute and that the defendant has not caused or contributed to the delays. People v. Campa, 217 Ill. 2d 243, 250-51 (2005). A delay is occasioned by the defendant and charged to the defendant when the defendant's acts caused or contributed to a delay resulting in the postponement of trial. Kliner, 185 Ill. 2d at 114. The defendant bears the burden of affirmatively establishing a speedy trial violation, and in making his proof, the defendant must show that the delay was not attributable to his own conduct. Kliner, 185 Ill. 2d at 114. Any period of delay occasioned by the defendant temporarily suspends the running of the speedy trial period until the expiration of the delay, at which point the statute shall recommence to run. 725 ILCS 5/103-5(f) (West 2004). The duty is upon the State to bring the defendant to trial within the applicable statutory period. Campa, 217 Ill. 2d at 251. The trial court's determination as to who is responsible for a delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion. Kliner, 185

7

Ill. 2d at 115.

When a defendant remains in custody, pursuant to section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2004)), the 120-day statutory period begins to run automatically from the day the defendant is taken into custody and the defendant need not make a formal demand for trial to come within the purview of the statute. Campa, 217 Ill. 2d at 251; 725 ILCS 5/103-5(a) (West 2004). In contrast, a defendant who is on bail or recognizance must be tried by the court within 160 days from the date the defendant demands trial. 725 ILCS 5/103-5(b) (West 2004). Additionally, under the Unified Code of Corrections, section 103-5(b) also applies to persons committed to any institution, facility, or program of the IDOC who have untried complaints, charges, or indictments pending in any county of Illinois. 730 ILCS 5/3-8-10 (West 2004). The parties do not dispute that the applicable speedy trial term was 160 days.

Here, defendant was charged with aggravated battery and domestic battery on February 14, 2004. At that time, the trial court noted defendant's demand for trial. On March 9, 2004, 24 days later, the State sought to nol-pros the charges against defendant, which the trial court granted. Defendant was transferred to IDOC custody on March 12, 2004, for a parole violation. On March 31, 2004, the new indictment charged defendant with two counts of aggravated battery to a police officer. An arrest warrant was issued against defendant on April 23, 2004. On August 11, 2004, defendant was released from the IDOC and the Cook County sheriff's department executed the warrant on defendant and took him into custody. Defendant contends that the State's use of the *nolle prosequi* and failure to notify defendant of the refiled charges was

a tactical maneuver used to violate defendant's speedy trial rights.

"[W]here the State requests a *nolle prosequi* on charges that have been brought against a defendant, the effect is to terminate the proceedings with respect to those charges." People v. Decatur, 191 Ill. App. 3d 1034, 1037 (1989). "As a result, defendant is free to go and to do as he pleases and is not required to post bond or to enter into a recognizance to appear at another time. Furthermore, if the charges are nol-prossed before jeopardy attaches, subsequent prosecution of the identical charges is permitted." Decatur, 191 Ill. App. 3d at 1037. "[T]he speedy-trial term is tolled during the period of time that the charges are no longer pending and defendant is neither in custody nor on bail or recognizance. The clock will continue to run once again with the refiling of the charges that were previously nol-prossed." Decatur, 191 Ill. App. 3d at 1038. The State must get the consent of the trial court before it may enter a *nolle prosequi*. The trial court's discretion to review the State's request is governed by a determination of whether the State's action is capriciously or vexatiously repetitious, or whether it will cause substantial prejudice to the defendant. People v. Williams, 315 Ill. App. 3d 22, 30 (2000). "If it is determined that the State engaged in technical maneuvering or that the State procured the *nolle prosequi* to cause delay or avoid statutory limitations, the speedy-trial term will not be deemed tolled. Rather, in those instances the statutory term will continue to run as of the date of the first filing or the first demand for trial." Decatur, 191 Ill. App. 3d at 1038.

In order to prevent the tolling of the statute, "there must be a clear showing that the State sought the *nolle prosequi* to gain some tactical advantage over defendant that would place him in a more disadvantageous position, or to otherwise harass or to prejudice defendant so as to avoid

9

or frustrate his interests which the speedy-trial right was designed to protect." Decatur, 191 Ill. App. 3d at 1039. "These interests are: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the defense may be impaired. Decatur, 191 Ill. App. 3d at 1039.

In the instant case, defendant asserts that the State used the *nolle prosequi* to avoid his speedy trial term and that the term should not be tolled for the time between the *nolle prosequi* and the refiling of the charges for aggravated battery to a police officer. We disagree.

The State sought to nol-pros the charges of domestic battery and aggravated battery of a police officer 24 days after the initial charges were filed. When the State refiled charges against defendant, it did not indict defendant for the exact same charges. Defendant was charged only with the aggravated battery to a police officer. The domestic battery charges were never refiled. Although the record is silent as to why the domestic battery charges were not refiled, the time that elapsed between the original indictment and the *nolle prosequi* was only 24 days into the speedy trial term. Moreover, at the time of the *nolle prosequi*, defendant was released from custody as to these charges. He remained in custody solely due to a parole violation.

This case is easily distinguished from People v. Hillsman, 329 Ill. App. 3d 1110 (2002), upon which defendant relies. In Hillsman, the defendant was charged on February 1, 2000, and the IDOC issued a parole hold. The defendant did not post bond on his charges and remained in custody. The record on appeal was silent as to when the parole hold was issued and the defendant was remanded to the IDOC. Hillsman, 329 Ill. App. 3d at 1112. The defendant's trial was scheduled for May 12, 2000, the 112th day defendant was in custody. The State sought to

continue the case beyond the defendant's 120th day in custody, but the trial court declined the State's request. Rather than agree to reschedule the case to the 120th day, the State moved to enter a *nolle prosequi*. Hillsman, 329 Ill. App. 3d at 1112. The State refiled the charges later that same day. Hillsman, 329 Ill. App. 3d at 1112. At the October 2000 trial on the refiled charges, the defendant filed a motion for discharge alleging that the State improperly moved to nol-pros the original charges to circumvent the 120-day rule. Hillsman, 329 Ill. App. 3d at 1112-13. The trial court granted the motion and dismissed the charges against the defendant with prejudice. Hillsman, 329 Ill. App. 3d at 1113. On appeal, the reviewing court found that there was "no doubt the State's motive in moving for a *nolle prosequi* and refiling the charges was to avoid the running of the 120-day speedy-trial period." Hillsman, 329 Ill. App. 3d at 1117. The Hillsman court noted that "despite defendant's recognizance bond on the refiled charges, defendant remained in *continuous* custody due to the parole hold after the State nol-prossed the charges and before it refiled new charges a few hours later." (Emphasis in original.) Hillsman, 329 Ill. App. 3d at 1117-18.

Here, in contrast to Hillsman, the State moved to nol-pros the charges only 24 days after they were filed. New charges were refiled three weeks later as to only one of the originally charged offenses, aggravated battery to a police officer. In the intervening time between the *nolle prosequi* and the refiling, defendant was taken into IDOC custody for a parole violation. At the time defendant was taken into IDOC custody, no charges were pending. Unlike Hillsman, the State did not seek a *nolle prosequi* to avoid the expiration of the speedy trial term.

As the State points out, defendant failed to show how the *nolle prosequi* frustrated his

11

speedy trial interests, such as oppressive pretrial incarceration, defendant's anxiety and concern over the charges, or that his defense was impaired. Defendant was incarcerated on the parole violation after the *nolle prosequi,* and the warrant on the aggravated battery charges was not served until he was released from the IDOC. Defendant contends that he was unable to prepare his defense while in the IDOC because he was not informed of the refiled charges, but he does not show how this impacted his defense. Defendant's argument does not demonstrate any harm that he suffered as a result of the *nolle prosequi*. Instead, defendant urges this court to presume that the State's actions were a violation of his right to a speedy trial. We are not persuaded.

Moreover, defendant's speedy trial claim must fail because defendant was tried within 160 days. Initially, 24 days passed from the date the original charges were filed (February 14, 2004) to the date of the *nolle prosequi* (March 9, 2004). Then, from the date the new charges were filed (March 31, 2004) until defendant's arraignment on the new charges (August 12, 2004), 134 days elapsed. Thus, a total of 158 days of the term were used. Following the arraignment on August 12, 2004, all other continuances were agreed to by defendant. Therefore, defendant was tried within the 160-day term.

Next, defendant argues that the State failed to prove him guilty of aggravated battery of a police officer beyond a reasonable doubt. Specifically, defendant asserts that Officer Garibay's testimony was insufficient to prove defendant guilty because it was inconsistent and was not corroborated by physical evidence or additional witness testimony. The State maintains that it proved defendant guilty of aggravated battery and Office Garibay's testimony was sufficient to establish defendant's guilt.

When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, the court's function is not to retry the defendant. People v. Hall, 194 Ill. 2d 305, 329-30 (2000). Rather, our inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); accord People v. Cox, 195 Ill. 2d 378, 387 (2001). Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses. People v. Cooper, 194 Ill. 2d 419, 431 (2000). Thus, it is the responsibility of the trier of fact to "fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict. People v. Smith, 185 Ill. 2d 532, 541 (1999).

To prove aggravated battery, the State was required to show that defendant committed a battery, in that the defendant intentionally either caused bodily harm to an individual or made physical contact of an insulting or provoking nature with an individual, and knew that the individual was a peace officer in execution of his official duties. See 720 ILCS 5/12-4(b)(6) (West 2004). In the present case, the State presented the testimony of Officer Garibay to establish defendant's guilt. Office Garibay testified that when he arrived at the motel, he saw defendant walking away from his room. Office Garibay called to defendant, defendant turned and looked at the officer, and then defendant began to run. Officer Garibay chased defendant and

eventually caught up. When Officer Garibay placed his hands on defendant, defendant hit Officer Garibay in the eye with a closed fist. As Officer Garibay fell, he continued to hold onto defendant, and he felt pain in his right shoulder and heard a "popping noise." Officer Garibay stated that he suffered a torn rotator cuff and bruising and swelling to his left eye. He was out of work for two months as a result of his injuries. In contrast, defendant testified that Officer Garibay was not involved in his arrest at all. He said that when the police called to him, he immediately put his hands in the air and that he did not run.

Contrary to defendant's assertions, the State was not required to present medical testimony to document Officer Garibay's injuries. See People v. Wydra, 265 Ill. App. 3d 597, 607 (1994). The Wydra court pointed out that the Illinois Supreme Court has stated that " '[a]lthough it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the [battery] statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required.' " Wydra, 265 Ill. App. 3d at 606, quoting People v. Mays, 91 Ill. 2d 251, 256 (1982).

In Wydra, the defendant was charged with the aggravated battery of a police officer after he ran from a police officer who tried to execute a traffic stop. Wydra, 265 Ill. App. 3d at 599-600. The officer testified that the defendant charged him and tried to get the officer's service revolver. During the struggle, the officer suffered scratches on his chin and hands. Wydra, 265 Ill. App. 3d at 600. On cross-examination, the officer admitted that his report did not included the fact that he was injured by the defendant. Wydra, 265 Ill. App. 3d at 601. The reviewing court concluded that the officer's testimony was sufficient to show that the defendant caused

14

bodily harm to the officer. Additionally, the court noted the fact that the police report did not mention injuries is not a direct contradiction of the officer's testimony; rather, it was an omission that constituted one factor for consideration in determining credibility. Wydra, 265 Ill. App. 3d at 607.

In the instant case, the trial court was presented with sufficient evidence to prove defendant guilty beyond a reasonable doubt. Officer Garibay's testimony showed that he identified himself as a police officer and that defendant struck him, causing injuries that resulted in him being out of work for two months. Moreover, the trial court stated in its ruling that it found Officer Garibay's testimony "to be much more credible" than defendant's testimony. All of the evidence, viewed in a light most favorable to the State, was clearly sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant caused bodily harm to Officer Garibay.

Defendant also asserts that the trial court improperly imposed an extended-term sentence. Specifically, defendant asserts that (1) the trial court improperly considered Officer Garibay's injuries, an inherent element of the crime, as an aggravating factor, and (2) the extended-term sentence reflects the trial court's original misapprehension that defendant was eligible for a Class X sentence. The State maintains that the trial court considered proper aggravating factors and his extended-term sentence was proper.

A circuit court's sentencing decision is entitled to great deference, and we will not reverse or reduce a defendant's sentence imposed within statutory guidelines absent an abuse of the circuit court's discretion. People v. Sturgess, 364 Ill. App. 3d 107, 118 (2006). This court

considers the entire scope of facts surrounding a criminal offense to determine whether a defendant's sentence is excessive. Sturgess, 364 Ill. App. 3d at 118.

Section 5-5-3.2(b)(1) of the Unified Code of Corrections allows the trial court to consider prior felony convictions of the same or similar class felony or greater class felony that occurred within 10 years from the current conviction, excluding time in custody, in determining whether to sentence a defendant to an extended term sentence. 730 ILCS 5/5-5-3.2(b)(1) (West 2004).

At the original sentencing hearing, the trial court incorrectly believed that defendant was subject to a Class X sentence. The trial court sentenced defendant to a term of 10 years "based on your prior background, based on the facts of this case, and based on the injuries to the officers." At resentencing, the State presented evidence of defendant's prior convictions for aggravated criminal sexual assault and kidnaping, which occurred within 10 years of the aggravated battery conviction, excluding time in prison. The trial court then imposed an eight-year sentence "based on the defendant's background, the fact that it is an extendable [C]lass 3 felony, and all the matters I previously alluded to on the date of sentencing."

Defendant contends that the trial court abused its discretion because it referenced Officer Garibay's injuries and that it was only two years less than original Class X sentence of 10 years. We disagree. The trial court may have mentioned the officer's injuries, but the court also based its decision on defendant's criminal background, which is a factor to consider for an extended term. " 'In determining an appropriate sentence, the defendant's history, character, rehabilitative potential, the seriousness of the offense, the need to protect society and the need for deterrence and punishment must be equally weighed.' " People v. Bowman, 357 Ill. App. 3d 290, 303

16

(2005), quoting <u>People v. Jones</u>, 295 Ill. App. 3d 444, 455 (1998). There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and the court is presumed to have considered any evidence in mitigation that is before it. <u>Bowman</u>, 357 Ill. App. 3d at 303. The record on appeal indicates that the trial court considered the circumstances of the offense as well as defendant's prior convictions in determining defendant's sentence. We do not find that the trial court considered any improper factors in aggravation.

Additionally, under section 5-8-2(a)(5), the statutory range for an extended Class 3 felony "shall not be less than 5 years and not more than 10 years." 730 ILCS 5/5-8-2(a)(5) (West 2004). The trial court sentenced defendant to an eight-year term, which is within the statutory guidelines. We disagree with defendant's contention that this sentence "reflects the trial judge's original misapprehension that [defendant] should be sentenced as a [C]lass X offender." The record indicates otherwise. The trial court acknowledged its misapprehension on the record and vacated the original sentence. The court then noted that defendant was eligible for an extended-term sentence and imposed an eight-year sentence. We find that the trial court specifically noted its original mistake and corrected it by sentencing defendant to a sentence with statutory guidelines. We find no abuse of discretion in defendant's sentence.

Finally, defendant contends that he is entitled to an additional 151 days of presentence credit for the time he spent in IDOC custody. The State responds that defendant is not entitled to credit for these days because the State did not obtain the *nolle prosequi* improperly and defendant was in custody for an unrelated parole violation. We have already held that the State's act of nol-prossing the original charges was not used to circumvent defendant's speedy trial rights, and now

17

find that defendant is not entitled to the additional credit because he was not in simultaneous custody for the parole violation and the aggravated battery charge.

Under the Unified Code of Corrections, every felony defendant sentenced to prison also receives a term of mandatory supervised release in addition to the written sentence. 730 ILCS 5/5-8-1(d) (West 2004). Accordingly, a term of mandatory supervised release is part of the original sentence. See 730 ILCS 5/5-8-1(d) (West 2004); People v. Baptist, 284 Ill. App. 3d 382, 387 (1996). Revocation of parole or mandatory supervised release is regarded as reinstatement of the sentence or delayed sentencing for the underlying crime, not as punishment for the conduct leading to the revocation. Baptist, 284 Ill. App. 3d at 387. Revocation does not extend the original sentence, but simply alters the conditions under which the defendant serves it. Thus, the fact that the events which lead to revocation may also constitute a second crime does not mean the revocation itself is punishment for the second crime. Baptist, 284 Ill. App. 3d at 387.

Here, defendant was taken into IDOC custody on a parole violation. When he was released from his confinement for the parole violation, he was then taken into custody on the arrest warrant for the aggravated battery charge. Defendant's time in the IDOC for his parole violation was separate from his confinement for the instant charges, as the IDOC confinement was part of the original sentence for a prior conviction. Since the time defendant spent in the IDOC was for a separate sentence and not for the aggravated battery charges, defendant is not entitled to credit for that time.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

1-05-0822

CAHILL and GARCIA, JJ., concur.